on behalf of the appellant. I reserve four minutes for rebuttal. Your Honors, the question the court needs to answer in this case is whether summary judgment was appropriate when the plaintiff offered a sworn affidavit stating that officers continued to assault him for approximately 16 minutes after they had subdued him while he was in handcuffs and shackles. Under this court's decision in Scritter v. Thornton, because the officers continued to use substantial force well after any possible need for it had dissipated, the officers violated the Eighth Amendment. Your Honors, I'd like to focus on two reasons why reversal is necessary here. The first is the district court's erroneous reliance on O'Brien v. Finch to exclude Mr. Sears' sworn allegations. You don't have any problem, because you don't need to have any problem, I suppose, but you don't have any problem with a proposition that anything that was essential to the disciplinary decision should be taken as established for present purposes. For example, that your client was unruly, resisted the officers, and struck one of them. Your Honor, the appellees aren't defending that application of that rule in O'Brien here. This court made clear in Mathis v. Adams I'm asking what your position is. We don't think that O'Brien extends to the Eighth Amendment context, Your Honor. Again, you don't have to persuade us that the disciplinary decision doesn't foreclose your client being innocent of any obstruction and innocent of any assault. You could, if you chose to do so for strategic reasons, concede that and say, still, they shouldn't have beat him when he was helpless and handcuffed and on the floor. Absolutely, Your Honor. Under Scritter v. Thornton, under plenty of this court's cases, the fact that a prisoner may have caused an incident that results in an application of force does not give the officers license to beat him. And that, I think, particularly here, even if you assume, Mr. Sears says in his own affidavit, that he was perhaps a little bit unruly, that he refused one order to be handcuffed, I think Mr. Sears says that. And even if he had assaulted one of the officers? Right, Your Honor. This court's heck precedent, which the appellees haven't argued here, I think makes clear that even a conviction for battery wouldn't bar an excessive force claim arising from the incident. I want to give you a chance to talk about O'Brien, which you were launching into there, but while you do so, can you just respond to the other side's argument that the district court didn't really rely on O'Brien? Yes, Your Honor. I think, first of all here, it's the appellees, respectfully, who induced the district court's error. In their motion for summary judgment at docket 143, page 11, they reintroduced the O'Brien issue at summary judgment. The district court had, we believe, appropriately cited O'Brien in its motion to dismiss opinion. They brought it back in. If you look at the district court's opinion, it is clear that it's using O'Brien to foreclose consideration of any of Mr. Sears' sworn allegations. None of Mr. Sears' allegations, with the exception of his allegation respecting the use of a second canister of pepper spray, are even discussed in the opinion. The undisputed facts, and that's what the district court calls them, that's appellee's fact statement verbatim. From looking at the district court's order, it just appears she viewed it from the wrong lens. She thought she couldn't consider any of Mr. Sears' sworn allegations. In other words, she thought O'Brien barred consideration of all of those facts. Yes, Your Honor. That appears to be the best reading of the district court's opinion. It also . . . I'm not sure it really . . . I'm interested in the reason we've got this case here. It's apparently a possible misapplication of O'Brien, but regardless of how she got there, her punchline paragraph on page 19, defendants use the minimal amount of force necessary, period. It doesn't matter. If O'Brien had never been decided, your position is that's still wrong. Absolutely, Your Honor. I think that's why the parties spent a significant amount of time in their briefs establishing . . . I think we've made quite clear our position that there were disputes of fact here. The district court did not have granted summary judgment to the defendants. Under this court's en banc decision in the United States versus Stein, a sworn affidavit can even overcome IRS tax records. Here, Mr. Sears has offered sworn allegations that, in fact, are largely consistent in many respects with the defendant's evidence. It was error for the district court to resolve fact issues with summary judgment. You're welcome to save your five and a half minutes, if you'd like, and put the burden on him. Yes, Your Honor. Let me ask you one question. You don't really even have to rely on your verified complaint because almost everything in it is repeated in that sworn affidavit, but probably this sworn affidavit . . . sworn complaint is also proper to be considered in a summary judgment context, is it not? Yes, Your Honor. This court precedent holds that the sworn affidavit is effectively the same as a . . . sorry, the sworn complaint is effectively the same as the sworn affidavit to be treated as such. Is anything in the complaint that's not in the affidavit significant? No, Your Honor. It's all consistent from Mr. Sears' perspective. Thank you, counsel. We'll give you . . . add five to your four if you need it. Mr. Wenger. Good morning, and may it please the court. My name is Edward Wenger, and I'm here on behalf of the appellees. This case at its core, as I believe Judge Karnes has recognized, is not an O'Brien case. This doesn't turn on the application of O'Brien. Our submission to the court is that this case is a Scott v. Harris case. You got a videotape you've been holding out on us? No, sir. We do not have a videotape, but we have a couple cases in which the principle from Scott v. Harris, which is that if there is record evidence, non-testimonial evidence that blatantly contradicts . . . And what's that? The Eleventh Circuit case that I have is Weiss v. City of Gainesville. I'm sorry, not the precedent, but what's the record evidence that blatantly contradicts and is undisputed? I think that there are three . . . I think it's important to put the allegations in context. At this point, from what I understand, the appellants are not arguing that any constitutional violation occurred before Mr. Sears was handcuffed. So their allegations turn on three different occasions. One was the allegation that he was continuously sprayed with pepper spray . . . Not continuously, but more than once. More than once for up to 16 minutes, that he was assaulted for 16 minutes, and that there was a continued assault. I didn't gather their position was that he was sprayed continuously for 16 minutes. Rather, he was sprayed over the course of 16 minutes more than once. I believe that you're correct, Your Honor. So I will absolutely suggest it. But the gravamen is that he was sprayed more than the one second burst that . . . So the record evidence that you're pointing to is the record of the six grams was missing from the spray can? That's correct, Judge. And so you say that contradicts his affidavit as a matter of law? I say that under Scott v. Harris, the court is not obligated to discount non-testimonial evidence that is going to blatantly contradict what's in a sworn affidavit in a way that no reasonable jury would find in favor of crediting that defense. No way six grams could have been administered in more than one spray as a matter of law? The record, I believe, bears out that six grams is consistent with a one second burst, which itself is consistent with not only the prison regulations, but also what this court has held to be constitutional to quell the disturbance of an unruly inmate. I'll tell you from my part, that doesn't rise to the level of Scott v. Harris. So how about the second piece of evidence? Before we get off of that piece of evidence, what about the possibility that other sprays and another canister, indeed, were simply not logged in to that log on which you're relying? I think that that's actually an important point, Judge Anderson. And one of the things that perhaps needed to be explained a little bit more in the brief were the prison regulations, which actually demonstrate that the check-in and check-out of the MK-4 canisters are very, very strictly guarded. They're very, very strictly controlled and very, very strictly . . . How do we know whoever testified to that is telling the truth? That's actually not testimonial evidence, Judge Carnes. Yes, it is. Oh. How do we know they're carefully logged in, carefully logged out, and that this one had only one gram, six-tenths of a gram, whatever it was used? If . . . We don't have a videotape of that. That's correct. We don't have a videotape of it. We don't have a machine that runs 24-7 and tells us when one of those sprays is used. Somebody had to testify to that, an affidavit or otherwise. I believe that that's actually . . . It wasn't an affidavit, Your Honor. I'm actually referring to the documentary evidence that actually shows the log. And somebody had to interpret the documentary evidence and say, this is kept in the ordinary and usual course of business, et cetera, et cetera. How do we know they're not lying? To . . . Even if they didn't testify, you're in an even weaker situation because there's certainly a motive not to . . . I mean, you've had the officers beating up on somebody after he was handcuffed and shackled, and they obviously know that's a problem, so they have every motive to conceal what they did. Respectfully, Judge Anderson, to your point, Judge Carnes, I think that that would ascribe a conjectural level of bad faith on behalf of not only the officers who were alleged and who have been made parties in this complaint, but also everybody from the shift supervisors that weren't implicated, from the folks, the sergeant-at-arms over the inventory. I thought we had precedent that if there were 20 witnesses who said the plaintiff did so-and-so and, therefore, the use of force was justified, and the plaintiff said, no, I didn't, he got a jury trial. Am I wrong about that? I think that that is a situation where you have a . . . what we've colloquially referred to as a swearing contest where you have one acting on the other side. Machines don't testify. Machines don't download their information into court. There has to be a human somewhere in the chain of evidence, and that's credibility versus the plaintiff's credibility, whatever the human says. I understand that. Our position is that the great weight of the non-testimonial . . . I know it, and you might on a motion for new trial persuade a judge of that, but that's not what the standard for summary judgment is. I understand that the standard for summary judgment is no genuine dispute of material fact. No issue of material fact. Correct. There's no genuine issue of material fact. Our position, as we've had to argue it, is that the judge here took a look at the . . . not only just the inventory log, but also the medical records, which we haven't discussed yet this morning, and found that Mr. Sears' account of the injuries he suffered were inconsistent with what was actually listed in the medical record, and they were inconsistent with the idea that this gentleman was assaulted for 60 minutes, that he was punched in the jaw so hard that he was in fear of losing consciousness. And who made those medical records? They were the nurses who actually responded to the medical records. And therefore, we have to take the nurse's written testimonial in the records as credible proof? The only tarry that I have with that, Your Honor, is the idea that the medical records themselves are testimonial for purposes of summary judgment. These weren't witnesses who, at the time, were giving an affidavit for purposes of litigation. These were witnesses who were responding to a gentleman who said . . . Therefore, they're more credible? Not more credible. I still think that we . . . I'm very, very loathe to go into the idea that we're actually weighing the credibility of two testifying interested party witnesses. We're not weighing. We're just saying, suppose the one that has this story is telling the truth, and the ones that have this story are not telling the truth, and how do we know that's not the situation? In our view, Your Honor, we don't believe the district court was obligated to turn a blind eye to what was obviously going on whenever these records were made. These records, particularly the medical . . . Suppose they had just been . . . all of it had been testified to as opposed to there being any written records. Would your position be different? I believe it would, Your Honor, because in that case we would have a swearing contest. So if somebody writes something down, it's more credible than if he testifies to it under oath and under penalty of perjury. I think that the important difference is that if you do have somebody who's actually being asked to give testimony on behalf of a litigating position or on behalf of a litigating party, that is different, and that is . . . I wouldn't go so far as to say it's less credible. I would go so far as to say . . . Maybe you just did because you said it's different. How is it different? More credible, less credible, same credibility? I think that credibility is not the correct way to think about that determination. I think that there is . . . Do we give it more weight or less weight, the fact that somebody's being asked to testify under penalty of perjury as opposed to what they wrote on a piece of paper which wasn't under penalty of perjury? I think that there has an awful lot that goes to the motivation of why these particular records were kept. The check-in, check-out of the inventory is meant to take account and to address situations like this right here, where you have an allegation by one party that a certain amount of force was used, and an allegation by another that that force exceeded what it was the prison guards were discussing. The medical records were not made, and they weren't compiled with the object of setting out a litigating position. They were actually made and compiled with the object of making sure that Mr. Sears got the appropriate treatment, and that appropriate treatment was listed as he had pain in the back of his head, but the area that he was experiencing pain was unremarkable. I'm not so sure it was unremarkable. Even the district court acknowledged that medical records showed an egg-sized soft lump with redness and ecchymosis, which I don't know what that means. Well, Judge Hanson, if I may refer you to the actual emergency room record itself, the word unremarkable is used several times, and our position is . . . That, I believe, was the injury that he had experienced on his shin in our position, and I believe . . . On the head, and part of his testimony was that he was knocked so down that he was almost unconscious. That lump, an egg-sized lump, is not a small lump. My read of the record suggested that I thought that that egg-sized lump was not on his head but was on his shin. That was what I understood. Regardless of where it is, it's not something you want to have. That's true, and . . . I guess whether it's remarkable or not depends on whose it is. That I understand, but our position is that these medical records were kept in the normal course. They were kept for the purpose of . . . What we're to take is beyond dispute that he had an egg-sized lump from the altercation. Well, that . . . This is important to actually contextualize the argument that the appellant is making here, and that's that there's no dispute that this was an unruly inmate, and there's no dispute that the initial altercation, everything that happened before he was cuffed, did not rise to the level of a constitutional violation. These injuries, and I would submit to the court, are consistent with a gentleman who was pepper-sprayed with a one-second burst and who experienced the burning around his eyes and his mouth. The skinning of the shins, the bruising on the elbows, and the egg-sized lump, that's consistent with a gentleman who had attacked a group of prison guards and was restrained, was taken to the ground, was placed in handcuffs. What these medical records show is that he was not subjected to the 16-minute beating that he's alleged. Suppose a jury could find that he was subjected to a beating after he was handcuffed and face-down. They'd believe that part of the testimony. But it didn't last for 16 minutes. It may have seemed like forever to him, but the jury finds out it just lasted for a minute or two. You're not entitled to summary judgment if the jury could find that, are you? Under this court's precedent, if . . . If he had experienced some semblance of rough handling or some semblance . . . No, no, he's down there beaten for a minute and a half. First of all, I don't believe that that's the case here, and I think he's been . . . What you believe is the case here and what I believe is the case here doesn't matter. It's what a jury could find. If the jury could find that he was beaten for 60 seconds while handcuffed and laying face-down. In that case, I think that they would have to actually assess what the circumstances leading up to the initial altercation were, which the district court judge conscientiously did here, and then would have to determine whether or not the use of force was appropriately tempered. And I think in that case, you are dealing with a different circumstance. So you're saying under certain circumstances, the fact the guy is handcuffed behind his back, laying face-down, the cop or the prison guards here could continue beating him? No, certainly not, Your Honor. I believe that on . . . if you have a situation . . . What do the circumstances have to do with it if, in the hypothetical I gave you, face-down, handcuffed behind his back, and they beat him for an additional 90 seconds? Not 16 minutes, but 90 seconds. If, in that case, the jury were to have found that, and if this was purely a swearing contest, and that's an important caveat for our argument, if the jury would have found that that occurred sadistically and maliciously, then, yes, you would have an Eighth Amendment violation. Our point, though, is that you don't have a swearing contest in this case. You have what is . . . Of course you do. I mean, you do have his sworn affidavits, the . . . That is, but it's not a pure swearing contest. These aren't the only facts that are at issue here in our response, and it's one that I need to keep on coming back to, is that the documented evidence, the medical records, which are kept in due course, the strictly controlled MK-4 canister logs, in and out, which are kept in normal course, and there's been no allegation that they haven't been, blatantly contradict this gentleman's story that he was beaten . . . So any business record trumps a plaintiff's contrary testimony? Not as a matter of law, Your Honor, but I think that the important part about summary judgment . . . Matter of fact? I mean, what do you mean, not as a matter of law? There's not a hard-and-fast bright-line rule that business records contradict a . . . Well, it sounds like, to me, if their business record's about the extent of the injury or how much pepper spray was used, your position is, of course, they trump the plaintiff's testimony. I wouldn't go so hard as construing that as a hard-and-fast rule. I assume my time has run out, but if I may answer your question, Your Honor, our rule is that on the four corners of this case, on the facts of this case, we do have a story that is blatantly contradicted by records that no person, not Mr. Sears, not our friend on the other side, has given a reason to doubt the veracity or . . . Of course he's given a reason. His testimony. But there's no reason to actually doubt these were kept in the normal course and that these folks who kept these records were involved in this altercation, had talked to the folks, that there was sort of a wide-ranging conspiracy. I want to ask you a question about Colonel Roberts and Lieutenant Hart. I think the district court discounted the plaintiff's evidence to the effect that they were in a position to intervene by saying that they were too far away. Is there something in the record that shows that the place that plaintiff's testimony put them was too far away? I don't believe that there's anything on that point except for the testimony of the officers themselves and for the plaintiff. There is a diagram of the actual prison facility, but for purposes of where they were at one point or another, that is a matter of the swearing affidavits. But from what I understand . . . Furthermore . . . From what I understand, the appellants have not challenged the failure to intervene dismissal on appeal. All right. From what I understand, there was one reference to it, I believe, in a footnote, which I believe in this court's precedent was not enough to . . . Well, if that is fairly raised, and I didn't think about that, but it seems to me that unless there's some evidence that that corridor to which plaintiff referred is demonstrably someplace far away, the plaintiff also testified that when he was being choked, he called for Colonel Roberts, which suggests that Colonel Roberts was within . . . close enough to intervene. And furthermore, he testified that Colonel Roberts and Lieutenant Hart followed the officers who escorted him to the medical clinic after he was beaten, and he was alleged that he was continued to be beaten. So it seems to me there's plenty of evidence that Colonel Roberts and Lieutenant Hart were close enough to intervene, saving aside the waiver question. The reason why I believe that neither side has addressed the failure to intervene at any great length is because the failure to intervene presupposes that the attack occurred in the way that Mr. Sears has testified that it occurred. So in our view, I believe that the two counts must rise and fall if Mr. Sears argues that he was . . . And if the court is inclined to send this back down to go to a jury, then there would perhaps be a question. I'm not prepared to concede that here. But if there was no assault, and if the court were inclined to agree with our side . . . Yeah, but if we don't agree and we think there was an assault, then where are we on the failure to intervene issue? That's the question. That has not been pushed to any great length at appeal, so I'm not prepared to concede that that is an issue that would still . . . But what are you prepared to argue about it? I'm asking for your position. My position, Your Honor, is that if that were the case and this were to send back down to trial, there's an argument that that particular . . . I don't care what the arguments are, counsel. I don't care what you could argue. I want to know what your position is about it. My position is probably the failure to intervene claim would rise and fall with the Eighth Amendment. Okay, so it isn't waived. I would still say on this court's precedent it has not been preserved. Then it doesn't rise or fall. You've got to make up your mind. It's too late in the process to say A and then not A, B then not B. I believe that the claim has been waived, and that is my . . . that's our argument. Should the court find the claim is not waived, I would believe that this would rise and fall with the excessive force claim, Your Honor. Therefore, it couldn't be dismissed on the ground that there was no genuine issue in the material fact that they were too far away to intervene. That would be an additional fact that would need to be found. Yes? I have a question before you sit down. You said there were three pieces of evidence that rose to the level of the Scott v. Harris videotape. One of them was the records documenting the amount of pepper spray that had been used. The second one was the medical records. What was the third one? The third one was actually the somewhat shifting nature of Mr. Sears' account of what had actually occurred. He had filed a number of grievances. And that rises to the level of a videotape of a car chase? No, but this court has in Weiss v. City of Gainesville relied on contradictory testimony, contradictory depositions to say that there was a blatant contradiction with one gentleman's story. So, I mean, I understand that my time's expired, Judge Martin, but I'm happy to engage with this if you would prefer. But our position was, on that front, that Mr. Sears had never alleged that there was a second can of pepper spray that was used during his grievance process. He had actually, at one point, and that's at page 81, actually requested that the folks weigh the cans to try to demonstrate that the one second verse did not occur. And as soon as that was done and the cans were weighed  Once this progressed to the Civil Rights Federal Complaint, he began discussing a second canister. And we believe that that's . . . I think that's . . . Okay, thank you, Judge Martin. Thank you. All right. Mr. Farris-Burke, why don't you start with the failure to intervene issue and whether or not you've preserved it in your briefs. Yes, Your Honor. This is the first I'm hearing that that has been forfeited. I was looking at your appropriately detailed table of contents to see if I overlooked anything, and I can't see it. Your Honor, it's not a standalone entry in the table of contents. On the statement of issues, right? It's not in the statement. No, it's not, Your Honor. Therefore, you've waived it. Why not? Your Honor, we've put the court on notice of it in our briefs. That doesn't cut it, does it? You've got to argue and tell us why. Your Honor, in our briefs, our opening brief at page 7, and then again at page 30, and then in the reply brief at 11, probably at 11, it says, Captain Dexter, Lieutenant Hart, and Colonel Roberts all remain in the case and are potentially liable for their failure to intervene. I thought that was attacking the fact that the district court said they're not liable because there is no underlying constitutional violation. Your Honor, that I think was in response to the fact that the appellees in their brief took the position that they were just not going to discuss any individual who was not involved in the use-of-force incident. They don't have to. You're the one that's wanting to reverse the judgment. Yes, Your Honor. The question is, did you argue that even if . . . or that if you prevailed on the issue, that it wouldn't be the supervisory . . . I'm sorry. The failure to intervene issue shouldn't be decided against you on the grounds that the district court decided it against you. Your Honor, at page 30 of the blue brief, and admittedly it's in a footnote, but it's an extensive footnote, we make that argument. You said also on page 7? Right. Page 7 is where we discuss the events, the fact that Captain Dexter was present for the entirety of the beating and that Defendants Hart and Roberts were watching from a short distance away. There's probably a difference between Captain Dexter who, if there was an actionable assault excessive towards Captain Dexter, undisputed, she was there the whole time. But the district court said that Lieutenant Hart and Colonel Roberts were too far away and therefore could not have intervened. I would have thought there should have been some challenge to that in your brief. Apparently, there's a pretty good challenge, namely, that there is no evidence that they were too far away. That's right, Your Honor. Mr. Sears offers, again, a sworn affidavit that says that they were close enough to observe. Again, under Scritch and under this other court's precedent, what matters is that the officers be present and fail to take reasonable steps to stop the excessive force. On page 7, continuation from 6, say Mr. Sears' verd account of this event tells a different story and then you go into great length, well, not great length, but a number of sentences about how he claims that he got excessive force administered to him. Then you say Mr. Sears states that Captain Dexter was present for the entirety of the beating and did not act to stop it when Lieutenant Jeffrey Hart and Colonel Roberts watched from a short distance, period, and you cite what he said in his sworn statement. Yes, Your Honor. That's not raising the issue and arguing it's wrong. I think the argument's at page 30 in the footnote. Well, it's not fulsomely presented, let's say, to put that. Did the red brief, did the State Defendant's red brief say, argue that it was waived? No, Your Honor. This is the first time I'm hearing of it. So the issue is whether you preserved it in footnote 12 on page 30. Yes, Your Honor. I think even if the court were to conclude that Hart and Roberts, there's no evidence they were close enough, I think it's pretty plain throughout all of Mr. Sears' arguments that Captain Dexter was an integral part of this and that she's liable for her failure to intervene. Does it matter? I mean, you get the judgment. You've got your damages. In a real world, we all know where the money will come from if you prevail. That's right, Your Honor. Just briefly, with regard to the chemical accountability log, I just want to first note, confirming Judge Martin's point, there's no evidence, certainly no undisputed evidence in the record, regarding the correspondence between time of spray and spray weight. Moreover, Your Honor, looking at those chemical accountability logs, docket 143-6 at pages 5 to 6, I think, with respect to opposing counsel, there are great things there that a good trial lawyer could bring out in front of a jury. The weight, the check-in weight on one of them is crossed out and scribbled over and initialed next to, and there's also an inconsistency between them. The check-in time on one says 1.30 p.m., and the check-in time on the other says 4 p.m. Again, these may be kept in the ordinary course, but that is not enough under this court's precedent to overcome the plaintiff's sworn affidavit. I'm happy to answer any other questions. Otherwise, the district court's judgment should be reversed. Thank you, counsel. Appreciate it. We'll take the case under submission. Next case up is Crawley Maritime v. National Union Fire Insurance. Please stand by. Please stand by.